**Salvatore ORLANDO, Plaintiff-Appellant,**

v.

**Melvin LAIRD, individually and as Secretary of Defense of the United States; and Stanley R. Resor, individually and as Secretary of the Army of the United States, Defendants-Appellees.**

**Malcolm A. BERK, Plaintiff-Appellant,**

v.

**Melvin LAIRD, individually, and as Secretary of Defense of the United States, Stanley R. Resor, individually, and as Secretary of the Army of the United States, and Col. T. F. Spencer, individually, and as Chief of Staff, United States Army Engineers Center, Fort Belvoir, Defendants-Appellees.**

**Nos. 477, 478, Dockets 35270, 35535.**

United States Court of Appeals, Second Circuit.

Argued March 3, 1971.

Decided April 20, 1971.

Irving R. Kaufman, Circuit Judge, concurred and filed opinion.

Leon Friedman, New York Civil Liberties Union, New York City (Burt Neuborne, Kunstler, Kunstler & Hyman, Norman Dorsen and Kay Ellen Hayes, New York City, on the brief), for plaintiff-appellant Salvatore Orlando.

Norman Dorsen, New York City (Leon Friedman, Burt Neuborne, New York Civil Liberties Union, Theodore C. Sorensen, Kay Ellen Hayes, and Marc Luxemberg, New York City, on the brief), for plaintiff-appellant Malcolm A. Berk.

Edward R. Neaher, U. S. Atty., E. D. New York (Robert A. Morse, Chief Asst. U. S. Atty., David G. Trager, Edward R. Korman, and James D. Porter, Jr., Asst. U. S. Attys., E. D. New York, on the brief), for defendants-appellees.

Before LUMBARD, Chief Judge, and KAUFMAN and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Shortly after receiving orders to report for transfer to Vietnam, Pfc. Malcolm A. Berk and Sp. E5 Salvatore Orlando, enlistees in the United States Army, commenced separate actions in June, 1970, seeking to enjoin the Secretary of Defense, the Secretary of the Army and the commanding officers, who signed their deployment orders, from enforcing them. The plaintiffs-appellants contended that these executive officers exceeded their constitutional authority by ordering them to participate in a war not properly authorized by Congress.

In Orlando's case the district court held in abeyance his motion for a preliminary injunction pending disposition in this court of Berk's expedited appeal from a denial of the same preliminary relief. On June 19, 1970 we affirmed the denial of a preliminary injunction in Berk v. Laird, 429 F.2d 302 (2 Cir. 1970), but held that Berk's claim that orders to fight must be authorized by joint executive-legislative action was justiciable. The case was remanded for a hearing on his application for a permanent injunction. We held that the war declaring power of Congress, enumerated in Article I, section 8, of the Constitution, contains a "discoverable standard calling for *some* mutual participation by Congress," and directed that Berk be given an opportunity "to provide a method for resolving the question of when specified joint legislative-executive action is sufficient to authorize various levels of military activity," and thereby escape application of the political question doctrine to his claim that congressional participation has been in this instance, insufficient.

After a hearing on June 23, 1970, Judge Dooling in the district court denied Orlando's motion for a preliminary injunction on the ground that his deployment orders were constitutionally authorized, because Congress, by "appropriating the nation's treasure and conscripting its manpower," had "furnished forth the sinew of war" and because "the reality of the collaborative action of the executive and the legislative required by the Constitution has been present from the earliest stages." Orlando v. Laird, 317 F.Supp. 1013, 1019 (E.D.N.Y.1970).

On remand of Berk's action, Judge Judd of the district court granted the

appellees' motion for summary judgment. Finding that there had been joint action by the President and Congress, he ruled that the method of congressional collaboration was a political question. Berk v. Laird, 317 F.Supp. 715, 728 (E.D.N.Y.1970).

The appellants contend that the respective rulings of the district court that congressional authorization could be expressed through appropriations and other supporting legislation misconstrue the war declaring clause, and alternatively, that congressional enactments relating to Vietnam were incorrectly interpreted.

It is the appellants' position that the sufficiency of congressional authorization is a matter within judicial competence because that question can be resolved by "judicially discoverable and manageable standards" dictated by the congressional power "to declare War." See Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). They interpret the constitutional provision to require an express and explicit congressional authorization of the Vietnam hostilities though not necessarily in the words, "We declare that the United States of America is at war with North Vietnam." In support of this construction they point out that the original intent of the clause was to place responsibility for the initiation of war upon the body most responsive to popular will and argue that historical developments have not altered the need for significant congressional participation in such commitments of national resources. They further assert that, without a requirement of express and explicit congressional authorization, developments committing the nation to war, as a *fait accompli*, became the inevitable adjuncts of presidential direction of foreign policy, and, because military appropriations and other war-implementing enactments lack an explicit authorization of particular hostilities, they cannot, as a matter of law, be considered sufficient.

Alternatively, appellants would have this court find that, because the President requested accelerating defense appropriations and extensions of the conscription laws after the war was well under way, Congress was, in effect, placed in a strait jacket and could not freely decide whether or not to enact this legislation, but rather was compelled to do so. For this reason appellants claim that such enactments cannot, as a factual matter, be considered sufficient congressional approval or ratification.

The Government on the other hand takes the position that the suits concern a non-justiciable political question; that the military action in South Vietnam was authorized by Congress in the "Joint Resolution to Promote the Maintenance of Internal Peace and Security in Southeast Asia"[1] (the Tonkin Gulf Resolution) considered in connection with the Seato Treaty; and that the military action was authorized and ratified by congressional appropriations expressly designated for use in support of the military operations in Vietnam.

---

1. The two district judges differed over the significance of the Tonkin Gulf Resolution, Pub.Law 88–408, 78 Stat. 384, August 10, 1964, in the context of the entire course of the congressional action which related to Vietnam. Judge Judd relied in part on the Resolution as supplying the requisite congressional authorization; Judge Dooling found that its importance lay in its practical effect on the presidential initiative rather than its constitutional meaning.

   Although the Senate repealed the Resolution on June 24, 1970, it remained in effect at the time appellants' deployment orders issued. Cong.Record S. 9670 (June 24, 1970); *see* Foreign Military Sales Act of 1971 § 12, P.L. 91–672 (January 12, 1971). The repeal was based on the proposition that the Resolution was no longer necessary and amounted to no more than a gesture on the part of the Congress at the time the executive had taken substantial steps to unwind the conflict, when the principal issue was the speed of deceleration and termination of the war.

We held in the first *Berk* opinion that the constitutional delegation of the war-declaring power to the Congress contains a discoverable and manageable standard imposing on the Congress a duty of mutual participation in the prosecution of war. Judicial scrutiny of that duty, therefore, is not foreclosed by the political question doctrine. Baker v. Carr, *supra;* Powell v. McCormack, *supra.* As we see it, the test is whether there is any action by the Congress sufficient to authorize or ratify the military activity in question. The evidentiary materials produced at the hearings in the district court clearly disclose that this test is satisfied.

The Congress and the Executive have taken mutual and joint action in the prosecution and support of military operations in Southeast Asia from the beginning of those operations. The Tonkin Gulf Resolution, enacted August 10, 1964 (repealed December 31, 1970) was passed at the request of President Johnson and, though occasioned by specific naval incidents in the Gulf of Tonkin, was expressed in broad language which clearly showed the state of mind of the Congress and its intention fully to implement and support the military and naval actions taken by and planned to be taken by the President at that time in Southeast Asia, and as might be required in the future "to prevent further aggression." Congress has ratified the executive's initiatives by appropriating billions of dollars to carry out military operations in Southeast Asia[2] and by extending the Military Selective Service Act with full knowledge that persons conscripted under that Act had been, and would continue to be, sent to Vietnam. Moreover, it specifically conscripted manpower to fill "the substantial induction calls necessitated by the current Vietnam buildup."[3]

There is, therefore, no lack of clear evidence to support a conclusion that there was an abundance of continuing mutual participation in the prosecution of the war. Both branches collaborated

2. In response to the demands of the military operations the executive during the 1960s ordered more and more men and material into the war zone; and congressional appropriations have been commensurate with each new level of fighting. Until 1965, defense appropriations had not earmarked funds for Vietnam. In May of that year President Johnson asked Congress for an emergency supplemental appropriation "to provide our forces [then numbering 35,000] with the best and most modern supplies and equipment." 111 Cong.Rec. 9283 (May 4, 1965). Congress appropriated $700 million for use "upon determination by the President that such action is necessary in connection with military activities in Southeast Asia." Pub.L. 89–18, 79 Stat. 109 (1965). Appropriation acts in each subsequent year explicitly authorized expenditures for men and material sent to Vietnam. The 1967 appropriations act, for example, declared Congress' "firm intention to provide all necessary support for members of the Armed Forces of the United States fighting in Vietnam" and supported "the efforts being made by the President of the United States * * * to prevent an expansion of the war in Vietnam and to bring that conflict to an end through a negotiated settlement * * *." Pub.L. 90–5, 81 Stat. 5 (1967).

The district court opinion in Berk v. Laird, 317 F.Supp. 715 (E.D.N.Y.1970), sets out relevant portions of each of these military appropriation acts and discusses their legislative history.

3. In H.Rep.No.267, 90th Cong., 1st Sess. 38 (1967), in addition to extending the conscription mechanism, Congress continued a suspension of the permanent ceiling on the active duty strength of the Armed Forces, fixed at 2 million men, and replaced it with a secondary ceiling of 5 million. The House Report recommending extension of the draft concluded that the permanent manpower limitations "are much lower than the currently required strength." The Report referred to President Johnson's selective service message which said, " * * * that without the draft we cannot realistically expect to meet our present commitments or the requirements we can now foresee and that volunteers alone could be expected to man a force of little more than 2.0 million. The present number of personnel on active duty is about 3.3 million and it is scheduled to reach almost 3.5 million by June, 1968 if the present conflict is not concluded by then." H.Rep.No.267, 90th Cong., 1st Sess. 38, 41 (1967).

in the endeavor, and neither could long maintain such a war without the concurrence and cooperation of the other.

Although appellants do not contend that Congress can exercise its war-declaring power only through a formal declaration, they argue that congressional authorization cannot, as a matter of law, be inferred from military appropriations or other war-implementing legislation that does not contain an express and explicit authorization for the making of war by the President. Putting aside for a moment the explicit authorization of the Tonkin Gulf Resolution, we disagree with appellants' interpretation of the declaration clause for neither the language nor the purpose underlying that provision prohibits an inference of the fact of authorization from such legislative action as we have in this instance. The framers' intent to vest the war power in Congress is in no way defeated by permitting an inference of authorization from legislative action furnishing the manpower and materials of war for the protracted military operation in Southeast Asia.

The choice, for example, between an explicit declaration on the one hand and a resolution and war-implementing legislation, on the other, as the medium for expression of congressional consent involves "the exercise of a discretion demonstrably committed to the * * * legislature," Baker v. Carr, *supra* 9 at 211, 82 S.Ct. at 707, and therefore, invokes the political question doctrine.

Such a choice involves an important area of decision making in which, through mutual influence and reciprocal action between the President and the Congress, policies governing the relationship between this country and other parts of the world are formulated in the best interests of the United States. If there can be nothing more than minor military operations conducted under any circumstances, short of an express and explicit declaration of war by Congress, then extended military operations could not be conducted even though both the Congress and the President were agreed that they were necessary and were also agreed that a formal declaration of war would place the nation in a posture in its international relations which would be against its best interests. For the judicial branch to enunciate and enforce such a standard would be not only extremely unwise but also would constitute a deep invasion of the political question domain. As the Government says, " * * * decisions regarding the form and substance of congressional enactments authorizing hostilities are determined by highly complex considerations of diplomacy, foreign policy and military strategy inappropriate to judicial inquiry." It would, indeed, destroy the flexibility of action which the executive and legislative branches must have in dealing with other sovereigns. What has been said and done by both the President and the Congress in their collaborative conduct of the military operations in Vietnam implies a consensus on the advisability of *not* making a formal declaration of war because it would be contrary to the interests of the United States to do so. The making of a policy decision of that kind is clearly within the constitutional domain of those two branches and is just as clearly not within the competency or power of the judiciary.

Beyond determining that there has been *some* mutual participation between the Congress and the President, which unquestionably exists here, with action by the Congress sufficient to authorize or ratify the military activity at issue, it is clear that the constitutional propriety of the means by which Congress has chosen to ratify and approve the protracted military operations in Southeast Asia is a political question. The form which congressional authorization should take is one of policy, committed to the discretion of the Congress and outside the power and competency of the judiciary, because there are no intelligible and objectively manageable standards by which to judge such ac-

**1044**

tions. Baker v. Carr, *supra,* 369 U.S. at 217, 82 S.Ct. 691; Powell v. McCormack, *supra,* 395 U.S. at 518, 89 S.Ct. 1944.

The judgments of the district court are affirmed.

IRVING R. KAUFMAN, Circuit Judge (concurring):

In light of the adoption by Congress of the Tonkin Gulf Resolution, and the clear evidence of continuing and distinctly expressed participation by the legislative branch in the prosecution of the war, I agree that the judgments below must be affirmed.