Ernest DaCOSTA, Plaintiff-Appellant,

v.

Melvin LAIRD, individually, and as Secretary of Defense of the United States, et al., Defendants-Appellees.

No. 189, Docket 71–1724.

United States Court of Appeals, Second Circuit.

Argued Sept. 17, 1971.

Decided Oct. 1, 1971.

---

2. See, *e. g.*, Pennock v. West, 23 Pa.Dist. R. 1062, 43 Pa.Co.R. 16 (1914) ; Reese v. Baker, 98 Fla. 52, 123 So. 3, (Fla.1929) ; Annot. 106 A.L.R. 383 (1937).

---

Leon Friedman, New York City (Burt Neuborne, New York Civil Liberties Union, and Norman Dorsen, New York University Law School, New York City, on the brief), for appellant.

Edward R. Korman, Asst. U. S. Atty., Eastern District of New York (Robert A. Morse, U. S. Atty., David G. Trager and James D. Porter, Jr., Asst. U. S. Attys., Eastern District of New York, on the brief), for appellees.

Before KAUFMAN, ANDERSON and FEINBERG, Circuit Judges.

PER CURIAM:

The plaintiff-appellant was drafted into the U. S. Army on December 3, 1970 for a two year period of service. After completing infantry training, he received orders to report for assignment to Vietnam. On July 23, 1971, he brought this action in the district court to prevent the defendants from enforcing the orders on the ground that they lacked authority to issue them. The plaintiff claimed that because Congress had never declared war against North Vietnam, the defendants' actions were in disregard of the Constitution. The district court granted the defendants' motion for summary judgment on the authority of this court's decision in Orlando v. Laird, 443 F.2d 1039 (2 Cir. 1971). It is our opinion that this case is governed by Orlando, and we affirm the judgment of the district court.

The appellant argues that the repeal by Congress of the Gulf of Tonkin Resolution removed one of the two vital supports which, he asserts, this court considered to be essential prerequisites to its conclusion in Orlando that there was legislative conduct equivalent to a declaration of war—the other support was a series of appropriations and Selective Service Acts for the Vietnam conflict. This is, however, a misconstruction of the Orlando decision. We said:

"Putting aside for a moment the explicit authorization of the Tonkin Gulf Resolution, we disagree with appellants' interpretation of the declaration clause for neither the language nor the purpose underlying that provision prohibits an inference of the fact of authorization from such legislative action as we have in this instance. The framers' intent to vest the war power in Congress is in no way defeated by permitting an inference of authorization from legislative action furnishing the manpower and materials of war for the protracted military operation in Southeast Asia." 443 F.2d at 1043.

In other words, there was sufficient legislative action in extending the Selective Service Act and in appropriating billions of dollars to carry on military and naval operations in Vietnam to ratify and approve the measures taken by the Executive, even in the absence of the Gulf of Tonkin Resolution. That resolution came at a time when a police action was being escalated into a large scale conflict and was a clear expression of congressional intent to support the Executive's move in that direction. Its repeal did not wipe out its history nor could it have the effect of a *nunc pro tunc* action. The Conference Committee recommending the repeal amendment in 1970, which was passed, expressed the reason for it as follows: "Recent legislation and Executive statements make the 1964 resolution unnecessary for the prosecution of U. S. foreign policy," Cong.Rep. No. 1805, 91st Cong., 2nd Sess., U.S. Code Cong. & Ad.News, p. 6069 (1970). It was not the intent of Congress in passing the repeal amendment to bring

all military operations in Vietnam to an abrupt halt. The Executive was then endeavoring to unwind the conflict as rapidly as it was feasible to do so. It has steadily pursued that objective up to the present time and has declared it to be its intention to continue the withdrawals of combat forces. If the Executive were now escalating the prolonged struggle instead of decreasing it, additional supporting action by the Legislative Branch over what is presently afforded, might well be required. But that is not the case before us.

If the mutual action by the Legislative and Executive branches and the particular means of collaboration they adopted to escalate a police action into large scale military operations are not a violation of the Constitution, as we held in *Orlando*, it can hardly be said that the combined efforts of the same two branches to achieve an orderly deceleration and termination of the conflict are. The Congress has continued to support the steps taken by the Executive in this regard. Although a number of senators and representatives have strongly and sincerely urged a speedier winding down of the armed strife and have sought to bring this about by introducing amendments to the draft extension bill to prevent the use of funds for the deployment or maintenance of United States Armed Forces in Indochina after specified dates, these amendments were defeated in the Senate on June 16, 1971 by votes of 52–44 (Chiles Amendment) and 55–42 (McGovern-Hatfield Amendment), 117 Cong.Rec.S. 9275, 9279 (daily ed. June 16, 1971), and in the House on June 17,

1971 by a vote of 237–147, 117 Cong. Rec.H. 5410 (daily ed. June 17, 1971).[1] On September 21, 1971, the Senate approved the House Bill extending the Selective Service Act through June 30, 1973, Pub.L. No. 92–   (Sept.   , 1971) (H.R. 6531, 92nd Cong. 1st Sess.). The Bill, as enacted, did not quarrel with the fact that troops were in Indochina but simply stated that it was the sense of Congress that there be a prompt and orderly withdrawal of United States forces from that area.

The remaining points raised by the appellant do not have sufficient merit to call for discussion. It may be said, however, that appellant's claim that the so-called "Pentagon Papers" revealed that there was in fact no mutual participation between Congress and the Executive as stated in the *Orlando* decision is not properly before us. The "Pentagon Papers" were not a part of the record in this case, nor was there evidentiary material in support of their authenticity.

As the constitutional propriety of the means by which the Executive and the Legislative branches engaged in mutual participation in prosecuting the military operations in Southeast Asia, is, as we held in *Orlando*, a political question, so the constitutional propriety of the method and means by which they mutually participate in winding down the conflict and disengaging the nation from it, is also a political question and outside of the power and competency of the judiciary.

The judgment of the district court is affirmed.

1. The appellant argues that there was widespread congressional criticism of the *Orlando* court's interpretation of the meaning of congressional action on military spending and draft extension bills. In light of this argument, it is interesting to note that the House defeated the McGovern-Hatfield Amendment knowing full

well exactly how such a defeat would be interpreted. Just prior to the vote, Congressman Pepper, citing *Orlando*, told the House that if it did not approve the amendment it would be voting for a declaration of war in Indochina, 117 Cong. Rec.H. 5409 (daily ed. June 17, 1971).