**Alden B. CAMPEN et al., Plaintiffs,**

v.

**Richard M. NIXON et al., Defendants.**

**No. 71 1604.**

United States District Court,
N. D. California.

Sept. 18, 1972.

———◆———

Treuhaft, Walker & Burnstein Law Corp., Oakland, Cal., and Rabinowitz, Boudin & Standard, General Counsel, National Emergency Civil Liberties Committee, New York City, for plaintiffs.

James L. Browning, Jr., U. S. Atty., Brian B. Denton, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

### THE "STANDING" ISSUE

In this suit, challenging the legality of the Vietnam War for lack of a declaration of war by the Congress, as provided by Article I, Sec. 8, cl. 11, plaintiffs'

only claim of "standing" to raise the issue is that they are citizens and taxpayers.

In our similar case of Mottola v. Nixon, 318 F.Supp. 538 (N.D.Cal.1970), this Court refused to recognize standing to one of the four plaintiffs in that case (Olsen) whose only claim to standing was that he was a citizen. We refrained from stretching the standing doctrine that far, notwithstanding other courts (e.g., United States v. Sisson, 294 F.Supp. 511 (D.Mass.1968) and Atlee v. Laird, 339 F.Supp. 1347 (E.D.Pa.1972)) have gone even that far. We dismissed as to that particular plaintiff but we recognized "standing" of the three other plaintiffs who were members of the Armed Forces Reserve and, as such, subject to call to active duty—including possible duty in Vietnam.

In the pending case all of the plaintiffs sue only as citizens and, as such, they have no more standing than did the plaintiff as to whom we dismissed in *Mottola*. We, therefore, dismiss the pending case on the basis of our previous *Mottola* ruling.

Further, we must dismiss this case because the Ninth Circuit Court of Appeals has meanwhile handed down its ruling on the Mottola v. Nixon appeal 464 F.2d 178 (1972), further restricting "standing" to raise the issue, holding that even the three Army Reserve plaintiffs in *Mottola* must be denied standing because, the Court of Appeals ruled, members of the Armed Forces cannot raise the issue of the validity of the Vietnam War unless and until they have actually received orders to report for service in that particular war operation —a ruling which is binding upon this Court but which has not yet been decided by the Supreme Court and which, unless overruled or modified by the Supreme Court, will greatly reduce the likelihood of the so-called "undeclared war issue" ever getting before that court.

## THE "POLITICAL QUESTION" ISSUE

In this case, as in *Mottola*, the government also raises the so-called "political question" defense, citing the very recent Ninth Circuit case of Sarnoff v. Connally, 457 F.2d 809 (9th Cir. 1972) as holding that the question of the President's power to wage war without a Congressional declaration of war, involving foreign affairs within the exclusive province of the Congress and the Executive, is, therefore, a "political question" beyond the power of the courts to adjudicate.

In view of our ruling against plaintiffs in the pending case on the standing issue it would serve no purpose to rule, as we did hold in *Mottola*, supra, that there is no merit to this so-called "political question" defense.

We wish to point out, however, albeit as dicta herein, that we do not regard *Sarnoff* as clearly or conclusively contrary to our holding in *Mottola* for the following reasons:

In *Sarnoff* the Ninth Circuit cited and apparently relied on DaCosta v. Laird, 448 F.2d 1368 (2d Cir. 1971) and Orlando v. Laird, 443 F.2d 1039 (2d Cir. 1971) (cert. den. 404 U.S. 869, 92 S.Ct. 94, 30 L.Ed.2d 113 (1971)) in support of its holding. It should be noted, however, that neither of those cases had held as indicated in *Sarnoff*. On the contrary, both of those cases recognized that the issue *was* justiciable and within the power of the courts to decide. In *Orlando* (which DaCosta merely followed), the court, speaking of the constitutional vesting of the war-declaring power in the Congress, held that this imposed on the Congress a duty of mutual participation in the prosecution of war and the question whether that duty has been performed is *not* a "political question" beyond the power of the courts, saying: "Judicial scrutiny of that duty, therefore, is *not* foreclosed by

the political question doctrine," (emphasis added) citing Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)— the same two cases which we cited, among others, in *Mottola* to the same point.

Further, the Supreme Court has not yet considered or decided the question whether presidential conduct of the Vietnam War, without Congressional declaration or other explicit approval, is constitutionally permissible. In its closest previous decision concerning the war powers of the President the Supreme Court found no "political question" difficulty in holding that President Truman had exceeded his constitutional Commander-in-Chief powers when he seized the strike-bound steel mills in furtherance of the undeclared Korean War. Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) cited and considered at pp. 548–550 of our *Mottola* decision of September 10, 1970.

In *Orlando*, the Court, far from declining to adjudicate the legality of the Vietnam War, actually proceeded to decide it, holding, however, that the particular record before it (which included evidentiary materials produced before the District Court) disclosed that the Congress had *impliedly* exercised its war-declaring power by such various ratifying actions as the Tonquin Gulf Resolution (long since repealed by Congress), extension of the Selective Service Act and various defense appropriations used by the President to carry on the Vietnam War operation.

Having determined that there had been at least "some" mutual participation between the Congress and the President, the *Orlando* court *merely* held only that "the constitutional propriety of the *means* by which Congress had chosen to ratify and approve the protracted mil-

itary operations in Southeast Asia is a political question" (emphasis added), rejecting plaintiff's contention (and our view expressed in *Mottola*) that the Congressional declaration of war, solemnly required by Art. I, Sec. 8, cl. 11 of our Constitution, should not be left to speculation, inference or mere implication from acts of the Congress which, not only notably refrain from explicitly authorizing or approving the war, but are also readily susceptible to interpretation that the Congress has acted for *other* expedient reasons without any such intent to approve or even despite its disapproval of the war.

Many members of Congress, faced with a presidential fait accompli, claim that they are constrained to vote for military draft and supportive military appropriations, not because they really approve the war, but, expediently, to protect men already committed to battle or for other expedient reasons unrelated to approval of the war as such.[1]

So, the only thing really decided by *Orlando*, quite contrarily, we think, to the principle declared by the Supreme Court in Greene v. McElroy, infra, n. (1) was that "The framers' intent to vest the war power in Congress is in no way defeated by *permitting an inference of authorization* from legislative action furnishing the manpower and materials of war for the protracted military operation in Southeast Asia. (emphasis added).[2]

The question whether *Orlando* and *DaCosta* were right in holding that the requirements of Art. I, Sec. 8, cl. 11 could be met in such an informal, inconclusive, equivocal manner has never been decided by the Supreme Court.[3]

In our *Mottola* decision of September 10, 1970, at pp. 553, commenting on *Orlando*, we indicated our view that compliance by Congress with the clear, vitally important war power provision of our Constitution, should be evidenced by "something better than the ambivalences of congressional inaction or mere defense legislation, appropriations and questionable resolutions," adding

> *Orlando* had relied as evidence of Congressional acts as military appropriations and Selective Service legislation to support the asserted "implication" of Congressional approval. The DaCosta court, nevertheless, held that these two remaining, but slender, ambiguous Congressional acts were sufficient to support an inference that Congress was complying with the Constitutional requirement that it declare or approve war.

1. The Supreme Court, itself, has recognized that in matters of great constitutional import Congressional approval should not be left to "implied" authorization or ratification from such acts as "Congressional appropriation of funds to finance the programs" but must be "explicitly" expressed, saying "Such decisions cannot be assumed by acquiescence or nonaction . . . They must be made explicitly . . . because explicit action, especially in areas of doubtful constitutionality, requires careful and purposeful consideration by those responsible for enacting and implementing our laws. Without explicit action by lawmakers, decisions of great constitutional import and effect would be relegated by default to administrators who, under our system of government, are not endowed with authority to decide them." See, Greene v. McElroy, 360 U.S. 474, 507, 79 S.Ct. 1400, 1419, 3 L.Ed.2d 1377 (1959)—cited and quoted at p. 543 in our Mottola Decision of 9/10/70.

2. In DaCosta the court reached the same conclusion by the same reasoning—except only that by the time the DaCosta case was decided the Congress had repealed the Gulf of Tonquin Resolution, upon which

3. It is true that the Supreme Court, 404 U.S. 869, 92 S.Ct. 94, 30 L.Ed.2d 113 (1971) denied a petition in Orlando for certiorari. However, as the Supreme Court, itself, has so often reminded us, and as every lawyer now well knows, denial of certiorari is not to be taken as an expression of that Court's opinion concerning the merits of the issues raised in any case wherein certiorari is denied. All it means is that there are not sufficient justices who wish to accept the case for consideration. (See Brown v. Allen, 344 U.S. 443 (1953) at pp. 489–497, 73 S.Ct. 397, 97 L.Ed. 469; Maryland v. Baltimore Radio Show, Inc., 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1950); Stern & Gressman, Supreme Court Practice, 4th Ed. 1969 pp. 4–7, 11).

" . . . that such compliance calls for nothing less than what the Constitution plainly says—a declaration of war by the Congress or at least an equally explicit congressional expression, either general or limited, but in any event such as to clearly indicate a congressional intent to meet its responsibilities under Article I, Section 8(11) by consenting to (or refusing to consent to), the initiation or continuance of war by the President; that unless the President receives, upon his request or otherwise, such a declaratory consent, either general or limited, as soon as reasonably possible, any undeclared war becomes a usurpation by the President or an abdication by the Congress—or, perhaps, both."

If our Ninth Circuit case of Sarnoff v. Connally, supra, is interpreted to mean that the undeclared war question is a "political question" beyond the power of our courts to adjudicate, then there is certainly conflict on an important question between our Ninth Circuit and the Second Circuit wherein *Orlando* and *DaCosta* have held to the contrary on that particular point—a classic situation in which the Supreme Court generally does, and should, resolve the point.

On the other hand, if *Sarnoff* should be interpreted as intending to hold to the same effect as *Orlando* and *DaCosta*, then there would still remain undecided by the Supreme Court of the United States the all-important question of the manner in which the Congress should perform its constitutional duty of approving any presidentially initiated war.

Unless and until the holdings of *Orlando* and *DaCosta* are considered and overruled or substantially modified by the Supreme Court and unless and until the holding of *Sarnoff* is clarified, Art. I, Sec. 8, cl. 11 of our Constitution, which plainly vests in the Congress the power "to declare war," will remain so devitalized as to be readily clouded and evaded by equivocal Congressional action, as it has been evaded in some past wars and up to now in the highly controversial Vietnam War.

If the state of the law remains as it now stands the American people will never be able to determine with any degree of certainty from equivocal Congressional actions and votes whether this Vietnam War, or any future presidentially conducted war, is being conducted with the kind of Congressional declaration and approval required by the Constitution; they will never be able to determine with any degree of certainty whether Congress is meeting or shirking its Constitutional responsibility and, if shirking its responsibility, then which members thereof are to blame for permitting a President to usurp the war-making power.

It is the view of this Court that the path should be cleared for a final statement from the Supreme Court on the important question involved in cases of this kind—for the enlightenment of the American people—who have been torn with controversy over the Vietnam War and who could again in the future be faced with a similar Presidential war involvement.

For the foregoing reasons the above-entitled case is dismissed.