**Elizabeth HOLTZMAN, Individually and in her capacity as a Member of the United States House of Representatives, Plaintiff,**

v.

**Elliot L. RICHARDSON, Individually and as Secretary of Defense and Robert C. Seamans, Jr., Individually and as Secretary of the Air Force, Defendants.**

No. 73-C-537.

United States District Court, E. D. New York.

June 13, 1973.

Neuborne & Friedman, New York City, for plaintiff; by Burt Neuborne, New York City, of Counsel.

Robert A. Morse, U. S. Atty., E.D.N. Y., Brooklyn, N.Y., for defendants; by James D. Porter, Jr., Cyril Hyman, Asst. U. S. Attys., of counsel.

Earle K. Moore, New York City, for Council for Christian Social Action of the United Church of Chirst, and others, amici curiae.

Lawrence R. Velvel, Washington, D. C., and Rabinowitz, Boudin & Standard, New York City, for Congressman Parren J. Mitchell, and others, amici curiae.

JUDD, District Judge.

## MEMORANDUM AND ORDER

Plaintiff, a member of the United States House of Representatives from a Brooklyn district, seeks a determination that the President of the United States and the military personnel under his direction and control may not engage in intensive combat operations in Cambodia and elsewhere in Indochina in the absence of congressional authorization.

### Motions

1. Plaintiff has moved for summary judgment declaring that the defendants may not order American military forces to combat in Cambodia and granting appropriate injunctive relief.

2. Plaintiff has also moved to serve an amended and supplemental complaint adding as plaintiffs three Air Force officers stationed in Guam, none of whom are residents of the Eastern District of New York.

3. Congressman Parren J. Mitchell of the Seventh Congressional District of Maryland, together with seven other Congressmen from districts not within the Eastern District of New York, have moved for leave to file a brief as *amici curiae*.

4. Defendants have moved to dismiss the complaint for failure to state a valid claim for relief because (a) plaintiff lacks standing; (b) the court lacks jurisdiction over the subject matter; and (c) the complaint involves non-justiciable political questions on which relief cannot be granted. Defendants also assert that the motion for summary judgment is premature.

No motion has yet been made to implement the statement that the complaint is brought on behalf of all similarly situated Congressmen. It is not yet necessary to determine whether the case may properly be treated as a class action.

## Facts

The complaint was filed on April 17, 1973. Plaintiff asserted among other things that her right to an undiluted vote upon the declaration of hostilities was impaired by presidential action in engaging in extensive combat in Cambodia without congressional authorization. She pointed out that a cease-fire had been negotiated in Vietnam, all American servicemen had been withdrawn, and all American prisoners of war had been released; and she asserted that no congressional authorization exists for committing American forces to combat in Cambodia.

An order to show cause why the court should not declare continued military activities in Cambodia to be unlawful was signed on April 19 by Judge Dooling, to whom the case had been assigned as a related case. Before the return date of the motion, Judge Dooling determined that the case was not in fact related to prior matters before him, and directed that it be reassigned under this court's random assignment plan. On the return date of the order to show cause on April 26, 1973, the matter was adjourned at defendants' request until May 18, with answering papers to be served by May 16.

The motion for summary judgment and injunctive relief was served and filed on May 8, 1973, accompanied by a statement of allegedly undisputed facts pursuant to Rule 9(g) of this court's General Rules. In particular, plaintiff asserted that the United States is currently engaged in large-scale combat air operations in Cambodia involving hundreds of war planes based in Thailand and Guam, and that United States war planes dropped 39,500 tons of explosives on Cambodia during March 1973 and flew 180 combat missions daily during the first three weeks of April. Plaintiff further asserts as undisputed material facts that the last American serviceman was withdrawn from Vietnam on March 28, 1973 and the last American prisoner of war was repatriated on April 1, 1973, and that although no Congressional authorization exists for the commitment of American forces to combat in Cambodia, the Executive has informed Congress that it is prepared to continue its miliatry activities whether or not the Congress appropriates funds for the Cambodian combat operations.

Defendants' response asserts that there are still over 1,300 missing in action in the Vietnam hostilities who have not yet been accounted for. Defendants also assert by affidavit of the Chief of the Civil Division of the United States Attorney's office that "there may well be dispute as to assertions made in plaintiff's Rule 9(g) statement." They request time to submit papers addressed to the merits.

The plaintiffs who are proposed to be added assert that they are being compelled to comply with unlawful orders, and to risk their lives in unauthorized bombing missions over Cambodia.

The brief of the Protestant, Catholic and Jewish religious groups, which appear as *amici*, assert that the existence of Congressional authorization to make war is justiciable, and point out that participation in Cambodian hostilities may conflict with the Agreement on Ending the War and Restoring Peace in Vietnam.

## Discussion

It is necessary to deal first with the question of the timing of the motions, then with the issue of plaintiff's standing and other jurisdictional questions, and finally with the particular motions of the several parties.

## Timing

The government relies on the provision of F.R.Civ.P. 12(a) that the United States or an officer or agency thereof has sixty days "after the service upon the United States attorney of the pleading" within which to answer a complaint.

Rule 56, however, provides that a party may move for summary judgment "at

any time after the expiration of 20 days from the commencement of the action." Plaintiff's motion for summary judgment was served 21 days after the complaint was filed.

The difference between the two rules is significant. The time is computed in different ways. Since an action is commenced under F.R.Civ.P. 3 by the filing of a complaint, regardless of the time when it is served, the measure of time in Rule 56 is unrelated to the time in Rule 12. Moreover, Rule 56 does not provide for a longer time before a motion can be made against a government agency than one against a private party.

■ Judge Charles E. Clark, a distinguished authority on procedure, criticized the original federal rule for not permitting the filing of a motion for summary judgment as soon as an action is brought. See his dissent in United States v. Adler's Creamery, Inc., 107 F. 2d 987, 992 (2d Cir. 1939). The 1946 amendment, which permitted a motion for summary judgment in advance of answer, should be interpreted in a manner to expedite the disposition of litigation. There is no need to impart into it the 60-day period for government answer that was specified in old Rule 12. A plaintiff moving for summary judgment before answer may be required to face a somewhat higher standard, however. As Professor Moore has suggested, a motion before answer should not be granted "unless it is clear that an issue of material fact cannot be presented." 6 Moore's Federal Practice (2d ed. 1948, 1972) ¶ 56.07, p. 2092.

There has never been any requirement of any delay in the consideration of a preliminary injunction in an action against a United States officer or agency, except as the court in its discretion may find to be appropriate.

■ The court therefore rejects the argument that the motion for summary judgment was premature.

*Defendants' Motion to Dismiss*

*Jurisdiction*

Defendants' three grounds for this motion to dismiss are all essentially jurisdictional, whether described as relating to standing, subject matter, or political question.

*Standing*

Under Article III, § 2, Clause 1, of the Constitution, the jurisdiction of federal courts is limited to "cases" and "controversies." Judicial definitions of the elements requisite for "cases" and "controversies" have proved to be elusive.

Unlike case or controversy, terms specifically enumerated in Article III, "standing" is not mentioned in the Constitution. It received its first full expression in Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).

■ Later, in Flast v. Cohen, 392 U. S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), the Court stated that political questions, advisory opinions, and lack of standing result in there being no justiciable controversy. Whether standing is denominated a component of jurisdiction or of justiciability may at first blush seem unimportant, due to the requirement that both issues must be resolved before any determination can be made of the merits of the controversy. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L. Ed.2d 663 (1962); DaCosta v. Laird, 471 F.2d 1146 (2d Cir. 1973). However, a complaint may be dismissed for lack of jurisdiction of the subject matter only if the claim is so attenuated and insubstantial as to be absolutely devoid of merit. Newburyport Water Co. v. Newburyport, 193 U.S. 561, 24 S.Ct. 553, 48 L.Ed. 795 (1904); Baker v. Carr, *supra.*

■ Plaintiff has raised a serious constitutional question dealing with the war-making power of Congress enumerated in Article I, § 8 of the Constitution. The seriousness of this question has been recognized repeatedly within this circuit. Berk v. Laird, 429 F.2d 302 (2d Cir. 1970); Orlando v. Laird, 443 F.2d

1039 (2d Cir. 1971). The delicate balance in the relationship between Congress and the President concerning the power to wage war is a controversy arising under the Constitution and therefore within the jurisdiction of this court. 28 U.S.C. § 1331(a).

Whether a particular party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of it is what has traditionally been referred to as the question of standing to sue. In Sierra Club v. Morton, 405 U.S. 727, 732, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972), the Supreme Court held that when a party, such as the plaintiff here, does not rely on any specific statute authorizing invocation of the judicial process,

> the question of standing depends upon whether the party has alleged such a "personal stake in the outcome of the controversy," Baker v. Carr . . . as to ensure that "the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." Flast v. Cohen.

■ The heart of the question becomes whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to assure the concrete presentation of issues in an adversary context so that a court will be properly guided in determining difficult issues. The controversy involved must be a substantial one admitting of specific relief. Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

In the present case the court is not being asked to decide ill-defined controversies over constitutional issues. The issue has been focused as sharply as possible: Whether the President's orders directing the bombing of Cambodia constituted a usurpation of Congress' war making power under Article I, § 8 of the Constitution. Nor is this a case in which the court is being asked to decide a hypothetical question or abstract issue.

Plaintiff is not asking for a determination whether the President would violate the Constitution by engaging in certain acts, but rather a determination that the present action of the President violates the Constitution. Nor is this a collusive suit where the parties are suspected of sharing the same interests.

■ Plaintiff *qua* Congresswoman does not merely suffer in some indefinite way in common with people generally. She is a member of a specific and narrowly defined group—the House of Representatives. As a Congresswoman, plaintiff is called upon to appropriate funds for military operations, raise an army, and declare war. Additionally, plaintiff has a continuing responsibility to insure the checks and balances of our democracy through the use of impeachment. When a plaintiff is a member of a narrowly defined group, which has been more directly affected by the conduct in question than has the general population, the test for standing should be met. Scott, Standing in the Supreme Court—a Functional Analysis, 86 Harv. L.Rev. 645 (Feb. 1973).

■ The question whether a particular person is a proper party to maintain the action does not, by its own force, raise separation of powers problems related to improper judicial interference in areas committed to other branches of the federal government. Flast v. Cohen, *supra.*

Professor Jaffee has stated, in Standing Again, 84 Harv.L.Rev. 633, at 634, 635 (1971),

> My own view has been and continues to be that a plaintiff who does not have a "protected interest," whether as an individual or as a group, does not have a *right* to review, but that a court in its discretion may at the suit of such a person review the legal question if it deems such consideration to be in the public interest.
>
> . . . I believe . . . that any citizen can constitutionally be a plaintiff . . . in a "public law"

suit even though he suffers no injury whatever beyond his concern for the public interest.

In Mitchell v. Laird, 476 F.2d 533 (D. C. Cir. March 20, 1973), thirteen members of the United States House of Representatives filed a complaint against the President and the Secretaries of State, Defense, Navy, and Air Force, seeking declaratory and injunctive relief against continued warfare in Indochina. In finding that the plaintiffs had standing, the Court relied upon the fact that it would be the duty of plaintiffs to consider impeachment if defendants' actions contravened the Constitution, that plaintiffs have a quite distinct duty to determine whether to make appropriations to support the hostilities, and that plaintiffs might have to take other legislative actions related to such hostilities, such as raising an army or enacting other civil or criminal legislation.

Standing of legislators was also upheld in Trombetta v. State of Florida, 353 F.Supp. 575 (M.D.Fla.1973), ruling that members of the Florida Legislature had standing to seek a declaratory judgment whether the proposed Twenty-seventh (Equal Rights) Amendment to the United States Constitution was repugnant to Articles V and VI of the United States Constitution; and in Coleman v. Miller, 307 U.S. 433, 59 S.Ct. 972, 83 L. Ed. 1385 (1939), an original proceeding in mandamus by members of the Kansas Legislature against the Secretary of the Senate of Kansas and others to compel the Secretary to erase an endorsement on the Senate resolution ratifying the Child Labor Amendment to the United States Constitution. The *Trombetta* and *Coleman* cases, involving state legislatures, are not completely parallel, but a member of Congress should have an equal right to invoke the jurisdiction of a federal court.

█ Congresswoman Holtzman is a member of a well defined group that is directly affected by defendants' action. She has presented a sharply focused controversy in an adversary context. Her responsibilities as a Congresswoman give her the nexus necessary to have standing to contest the policies of defendants that allegedly infringe upon her Article I duties.

█ The standing of the airmen as added plaintiffs is clear, Berk v. Laird, 429 F.2d 302 (2d Cir. 1970), if they can pass the test of venue, discussed later.

### Political Question

In determining whether there is subject-matter jurisdiction, the court must consider whether the case presents a "political question" outside its jurisdiction, before it can reach the merits of the controversy. This is a facet of the problem of justiciability.

The Second Circuit has shaped its formulation of the political question doctrine from guidance provided by the Supreme Court in cases such as Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L. Ed.2d 663 (1962); Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S. Ct. 863, 96 L.Ed. 1153 (1952); and Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). In Berk v. Laird, *supra*, 429 F.2d at 305, it held that a soldier seeking to enjoin orders in the Vietnam hostilities as lacking constitutional authority had a right to ask a court to determine whether there were "judicially discoverable and manageable standards" for resolving the issue. In Orlando v. Laird, 443 F.2d 1039, 1042 (2d Cir. 1971), it held that courts should not review the form of congressional authorization, once it had been determined that there was "any action by the Congress sufficient to authorize or ratify the military activity in question." In DaCosta v. Laird, 471 F. 2d 1146, 1155 (2d Cir. 1973), it held that judges could not appropriately determine

> whether a specific military operation constitutes an "escalation" of the war or is merely a new tactical approach within a continuing strategic plan.

Defendants rely on this statement but fail to consider the court's further statement (p. 1156) that

We specifically do not pass on the point urged by appellant whether a radical change in the character of war operations—as by an intentional policy of indiscriminate bombing of civilians without any military objective— might be sufficiently measurable judicially to warrant a court's consideration, i. e., might contain a standard which we seek in this record and do not find.

The appeal in that case was from an order denying injunctive relief, after the court had reviewed documentary material submitted by both sides. Here the issue arises on a motion to dismiss the complaint on its face. The motion for summary judgment on the merits is not being considered yet.

▆▆▆▆ The teaching of those cases is that the political question exception to jurisdiction depends on the facts of the particular case, but that the question of the balance of constitutional authority to declare war, as between the executive and legislative branches, is not a political question.

The Second Circuit rule was not repudiated by the Supreme Court's summary affirmance of Atlee v. Laird, 347 F. Supp. 689 (1972), aff'd, 411 U.S. 911, 93 S.Ct. 1545, 36 L.Ed.2d 304 (1973). The district court there dealt with a question whether Congress could constitutionally authorize warfare by appropriation bills rather than whether Congress had in fact given approval to the acts of the executive. The district court in Atlee referred to the rapid changes in world politics as a reason for not taking jurisdiction, but stated (p. 707):

> This, of course, is one reason justifying a court's taking small steps in sensitive areas, because the judiciary lacks the flexibility found in the political departments, to deal adequately with a constantly changing world scene.

The Atlee case dealt with a general challenge to "the constitutionality of the war in South East Asia." 347 F.Supp. at 691. Lack of merit may also have been mingled with procedural issues in the affirmance of the Atlee case, since the Supreme Court had previously refused to review cases which upheld the President's authority to use American forces in Vietnam. It had denied certiorari in the Berk, Orlando, and DaCosta cases. Berk v. Laird, 429 F.2d 302, cert. denied, 404 U.S. 869, 92 S.Ct. 94, 30 L. Ed.2d 113 (1971); Orlando v. Laird, 443 F.2d 1039, cert. denied, 404 U.S. 869, 92 S.Ct. 94, 30 L.Ed.2d 113 (1971); DaCosta v. Laird, 448 F.2d 1368, cert. denied, 405 U.S. 979, 92 S.Ct. 1193, 31 L.Ed.2d 255 (1972).

The present case, dealing with Cambodian combat operations, involves other issues, for the Senate and the House have spoken separately on Cambodia, and the entire Congress, in approving limited foreign aid to Cambodia, 22 U. S.C. § 2415(g), expressly stated in 1972 (P.L. 92–226) that such aid

> . . . shall not be construed as a commitment by the United States to Cambodia for its defense.

Judge Dooling said in his opinion in DaCosta v. Laird of May 24, 1972, concerning political question:

> The actual conduct of a defined war, *when that war is in its lawful progress*, is such an area. (Emphasis added).

The present case, attacking only the use of bombers in Cambodia after the Vietnam cease-fire, has a narrower reach than Atlee and may present one of the "small steps in sensitive areas" which is within the realm of justiciability under the district court's opinion in Atlee.

This is one of the first suits brought *after* the withdrawal of American troops from Vietnam and the return of prisoners of war. Reluctance to jeopardize the safety of American soldiers or prisoners is no longer a barrier to judicial determination of the constitutionality of a phase of war activity.

Therefore the case does not present a tactical decision in an ongoing war like *DaCosta* III, *supra*, 471 F.2d 1146

(whether to mine Haiphong harbor). Rather it involves the question whether the authorized Vietnam war has terminated. Courts have often been asked to determine when a war has ended and peace has begun. *E. g.*, United States v. Curtiss-Wright Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255 (1936); *cf.*, United States v. Swift, Crim.No. 72–747–W, District of Massachusetts, Opinion of Wyzanski, J., March 28, 1973.

 The political question doctrine does not appear to justify dismissal of this complaint before examination of the merits, on which this court has reached no decision.

### Advisory Opinion

 Plaintiff is not seeking a judicial determination as to her rights upon the happening of some events in the future. Rather, she is seeking a judicial declaration that military operations currently being conducted in Cambodia are in violation of the United States Constitution. This does not come within the rule *forbidding* advisory opinions, a rule which stems from the risk that comes from passing on abstract questions rather than limiting decisions to concrete cases in which a question is precisely framed by a clash of genuine adversary argument. Wright, Federal Courts (2d ed. 1970) pp. 37–38; Berger, Standing to Sue in Public Actions: Is It a Constitutional Requirement?, 78 Yale L.J. 816, 830–31 (1968).

### Venue

 There is no doubt of the proper venue of this action as originally brought by plaintiff, a Brooklyn resident, since express provision in 28 U.S.C. § 1391(e)(4) permits suit against a federal officer or agency in any judicial district where the plaintiff resides. Suit by the airmen might have to be brought in some other district if they were not joined in this action, or if plaintiff Holtzman did not have standing. Their presence as plaintiffs in a suit properly brought by Congresswoman Holtzman, however, does not prevent the venue being proper for all plaintiffs, since only one plaintiff need be a resident of the district. Natural Resources Defense Council v. Tennessee Valley Authority, 340 F.Supp. 400 (S.D.N.Y.1971), rev'd on other grounds, 459 F.2d 255 (2d Cir. 1972).

### Amount in Controversy

 In determining the amount in controversy, the court may consider the pecuniary result to either party which a judgment might produce. Berman v. Narragansett Racing Assoc., 414 F.2d 311 (1st Cir. 1969); Bass v. Rockefeller, 331 F.Supp. 945 (S.D.N.Y.1971); Note, Federal Jurisdictional Amount: Determination of the Matter in Controversy, 73 Harv.L.Rev. 1369 (1960).

 With millions of dollars in expenditures involved as part of the bombing operation, there is no question that the requirement of $10,000 or more in controversy is met.

### Plaintiff's Motions

 Addition of parties is not governed by F.R.Civ.P. 15, concerning amendments of pleadings, but F.R.Civ.P. 21, which states that

> Parties may be dropped or added by order of the court on motion of any party or on its own initiative at any stage of the action. . . .

Burlington Hospital v. Charles Pfizer & Co., 48 F.R.D. 343 (S.D.N.Y.1969); Maynard, Merel & Co. v. Carcioppolo, 51 F.R.D. 273 (S.D.N.Y.1970).

It is entirely appropriate and timely to permit the addition of the proposed military plaintiffs.

### Summary Judgment

Plaintiff's motion for summary judgment will be held in abeyance pending the receipt of additional papers from the defendants. In view of the length of time the court has had the matter under advisement, during which defendants have had an opportunity to assemble the pertinent facts, they should be prepared to set forth their contentions without much further delay.

It is ordered:

(1) That defendants' motion to dismiss the complaint be denied;

(2) That plaintiff be granted leave to serve an amended and supplemental complaint adding First Lieutenant Arthur Watson, Captain Michael Flugger, and Captain James H. Strain as plaintiffs;

(3) That defendants answer such amended and supplemental complaint within ten days after its service on the United States Attorney;

(4) That Hon. Parren J. Mitchell, Bella S. Abzug, Donald M. Fraser, Herman Badillo, Benjamin I. Rosenthal, Robert W. Kastenmeier, Don Edwards, and Michael J. Harrington, Members of Congress, be granted leave to file briefs in the case as *amici curiae*;

(5) That defendants shall file papers responsive to the motion for summary judgment by June 25, 1973; and

(6) That the matter be set down for argument on that motion at 10:00 a. m. on June 29, 1973.