**John DOE I, et al., Plaintiffs,**

v.

**President George W. BUSH and Secretary of Defense Donald H. Rumsfeld, Defendants.**

**No. CIV.A.03–10284–JLT.**

United States District Court,
D. Massachusetts.

Feb. 27, 2003.

Margaret A. Burnham, Burnham, Hines & Dilday, Max D. Stem, Stern, Shapiro, Weissberg & Garin, John Bonifaz, National Voting Rights Institute, Boston, MA, for John Chris Doe, Jane Doe, Susan E. Schumann, Charles Richardson, Nancy Lessin, Jeffrey McKenzie, Dennis Kucinich, Jesse Jackson, Jr., Sheila Jackson Lee, Jim McDermott, Jose E. Serrano, Plaintiffs.

George B. Henderson, Michael J. Sullivan, United States Attorney's Office, John Joseph Moakley Federal Courthouse, Boston, for George W. Bush, President, Donald H. Rumsfeld, Secretary of Defense, Defendants.

## OPINION [1]

TAURO, District Judge.

The plaintiffs seek to enjoin the President from launching a military invasion of Iraq, asserting that Congress has neither declared war nor taken any action that would give the President the power to wage such a war. The defendants oppose such an injunction for several reasons, including that plaintiffs' complaint does not set forth a justiciable issue and, therefore, this court has no jurisdiction to act. The threshold issue before the court, therefore, is whether the plaintiffs' complaint presents a nonjusticiable political question and, therefore, must be dismissed. For the reasons set forth below, this court concludes that the issues raised by the plaintiffs involve political questions, in the legal sense of that term, which are beyond the authority of a federal court to resolve.[2]

Although case law demonstrates the difficulty courts have experienced formulating a generally applicable definition of the term "political question," there can be no doubt as to its importance. Ever since *Marbury v. Madison*,[3] the Supreme Court has noted that

> By the Constitution of the United States, the President is invested with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character, and to his own conscience.... Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court.[4]

But since this declaration, courts have struggled "to define the metes and bounds

---

**1.** This opinion further memorializes the court's order and memorandum issued in open court, following hearing, on February 24, 2003 (see appendix).

**2.** Plaintiffs are three members of the military, fifteen parents or step-parents of members of the armed forces, and twelve members of the United States House of Representatives. De-

fendants are George W. Bush, President of the United States, and Donald H. Rumsfeld, Secretary of Defense.

**3.** 5 U.S. 137, 1 Cranch 137, 2 L.Ed. 60 (1803).

**4.** *Id.* at 165–170, 1 Cranch 137.

of that doctrine." [5]

To date the most comprehensive, and most often cited, definition of a political question is that of Justice Brennan, writing in *Baker v. Carr:*

> It is apparent that several formulations which vary slightly according to the settings in which the questions arise may describe a political question, although each has one or more elements which identify it as essentially a function of the separation of powers. Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.[6]

■ Of the six factors listed by Justice Brennan, the first—"a textually demonstrable constitutional commitment of the issue to a coordinate political depart-

ment"—is the most fundamental form of a political question. Where the Constitution has assigned a subject matter wholly to the discretion of the Executive or Legislative—the political branches of government—then the Judiciary simply has no constitutional basis for exercising its power.

■ As a general proposition, the conduct of this country's foreign relations involve political issues that the Constitution commits for resolution to the political branches.[7] As such, absent a clear abdication of this constitutional responsibility by the political branches, the judiciary has no role to play. But, should it become apparent that the political branches, themselves, are clearly and resolutely in opposition as to the military policy to be followed by the United States, then the situation would have gone beyond that of a political question and would pose a serious constitutional issue requiring resolution by the judicial branch. And so, a federal court may judge the war policies of the political branches only when the actions taken by Congress and those taken by the Executive manifest clear, resolute conflict.[8]

Each of the political branches has responsibilities and prerogatives with respect to war policy. The Constitution grants to Congress the power to declare war,[9] to raise and support armies,[10] to

5.  *Holtzman v. Schlesinger,* 484 F.2d 1307, 1309 (2d Cir.1973).

6.  369 U.S. at 217, 82 S.Ct. 691.

7.  *Oetjen v. Cent. Leather Co.,* 246 U.S. 297, 302, 38 S.Ct. 309, 62 L.Ed. 726 (1918) ("The conduct of the foreign relations of our Government is committed by the Constitution to the Executive and Legislative—'the political'—Departments of the Government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision."); *Baker v. Carr,* 369 U.S. at 211, 82 S.Ct. 691; *Harisiades v. Shaughnessy,* 342 U.S. 580, 588–89, 72 S.Ct. 512, 96 L.Ed. 586 (1952).

8.  *Massachusetts v. Laird,* 451 F.2d 26, 34 (1st Cir.1971); *Drinan v. Nixon,* 364 F.Supp. 854, 858 (D.Mass.1973) (Tauro, J.).

9.  U.S. Const. art. I, § 8, cl. 11.

10. *Id.* cl. 12.

provide and maintain a navy,[11] and to make rules governing these military bodies.[12] The President is made the commander-and-chief of the nation's armed forces.[13]

■ Case law makes clear that the Constitution's War Powers Clause does not confer on Congress the exclusive right to determine whether or not the United States will engage in war.[14] For example, there can be no argument but that the President may take retaliatory action against an attacking foe without waiting for congressional approval.[15] On the other hand, the Constitution has not left Congress helpless in the event that it disapproves of executive war-waging.[16] But, generally speaking, the war powers are understood to be shared by the political branches without judicial interference, even in the event of an undeclared war:

> As to the powers to conduct undeclared hostilities beyond emergency defense, then, we are inclined to believe that the Constitution, in giving some essential powers to Congress and others to the executive, committed the matter to both branches, whose joint concord precludes the judiciary from measuring a specific

executive action against a specific clause in isolation.[17]

■ The manner and form that Congress uses to ratify the President's decision to initiate military action is entirely discretionary, and the courts have no power to second guess the wisdom or form of such approval.[18] Congressional ratification for the continuation of an undeclared war may be found even in the absence of a formal declaration of approval.[19] The political question doctrine thus imposes upon the court the limited role of determining whether, either expressly or impliedly, Congress has ratified the President's undeclared war activity.[20]

The fact that some members of Congress and the President may appear to be at odds from day to day concerning military intervention in Iraq does not necessarily add up to resolute conflict between the political branches. Dispute, debate, and disagreement are the prerogatives of the political branches. It is only when this disagreement devolves into intractable constitutional gridlock that the judiciary is permitted to participate. The controlling issue for determining this court's jurisdiction, therefore, is whether such dispute and disagreement with respect to an invasion of Iraq has reached the point of clear

---

11. *Id.* cl. 13.

12. *Id.* cl. 14.

13. *Id.* art. II, § 2, cl. 1.

14. *Drinan v. Nixon*, 364 F.Supp. at 859 (citing *Mitchell v. Laird*, 488 F.2d 611 (D.C.Cir. 1973)).

15. *Mitchell v. Laird*, 488 F.2d at 613.

16. When the executive takes a strong hand, Congress has no lack of corrective power. Congress has the power to tax, to appropriate, to impound, to override a veto. The executive has only the inherent power to propose and to implement, and the formal power to veto.... [T]he advantage was given the Congress ....

*Massachusetts v. Laird*, 451 F.2d at 34.

17. *Id.* at 33.

18. *Massachusetts v. Laird*, 327 F.Supp. 378, 380–81 (D.Mass.1971) (Wyzanski, J.), *aff'd*, 451 F.2d 26 (1st Cir.1971); *Mitchell v. Laird*, 488 F.2d at 615; *Orlando v. Laird*, 443 F.2d 1039, 1043–44 (2d Cir.1971).

19. *Massachusetts v. Laird*, 327 F.Supp. at 380–81, *aff'd*, 451 F.2d 26 (1st Cir.1971); *Orlando v. Laird*, 443 F.2d at 1043.

20. *Drinan v. Nixon*, 364 F.Supp. at 859 (citing *Massachusetts v. Laird*, 451 F.2d 26 (1st Cir. 1971)).

and resolute conflict that would warrant judicial intervention.

■ Relevant to that inquiry in this case is the October Congressional Resolution concerning Iraq.[21] Plaintiffs argue that the October Resolution was an unconstitutional delegation of congressional authority of the power to declare war on Iraq to the President. But, whatever the merits of that argument, it is clear that Congress has not as yet acted to bind the President with respect to possible military activity in Iraq. Indeed, rather than manifesting its resolute conflict with the President, Congress has expressly endorsed the President's use of the military against Iraq:

> The President is authorized to use the Armed Forces of the United States as he determines to be necessary and appropriate in order to—(1) defend the national security of the United States against the continuing threat posed by Iraq; and (2) enforce all relevant United Nations Security Council resolutions regarding Iraq.[22]

Moreover, the President, for his part, has not irrevocably committed our armed forces to military conflict in Iraq.

And so, there is a day to day fluidity in the situation that does not amount to resolute conflict between the branches—but that does argue against an uninformed judicial intervention.

### CONCLUSION

For the reasons stated above, plaintiffs' request for injunctive relief is denied and defendants' motion to dismiss is allowed. The complaint is DISMISSED.

**21.** Authorization for Use of Military Force Against Iraq Resolution of 2002, H.J. Res. 114, Pub.L. 107–243, 116 Stat. 1501 (2002).