**SENATE SELECT COMMITTEE ON PRESIDENTIAL CAMPAIGN ACTIVITIES, suing in its own name and in the name of the United States,**

**and**

**Sam J. Ervin, Jr., et al., Plaintiffs,**

**v.**

**Richard M. NIXON, Individually and as President of the United States, Defendant.**

**Civ. A. No. 1593–73.**

United States District Court, District of Columbia.

Oct. 17, 1973.

Samuel Dash, Chief Counsel, Fred D. Thompson, Minority Counsel, Rufus Edmisten, Deputy Counsel, James Hamilton, Assistant Counsel, Richard B. Stewart, Sp. Counsel, Donald S. Burris, William T. Mayton, Ronald D. Rotunda, Asst. Counsels, Washington, D. C., for the Senate Select Committee; Sherman Cohn, Eugene Gressman, Jerome A. Barron, Washington, D. C., Arthur S. Miller, Chief Consultant to the Select Committee, Washington, D. C., of counsel.

Leonard Garment, J. Fred Buzhardt, Washington, D. C., Charles Alan Wright, Austin, Tex., Douglas M. Parker, Washington, D. C., Thomas Marinis, Jr.,

Houston, Tex., for Richard M. Nixon; Richard A. Hauser, K. Gregory Haynes, Paul S. Trible, Jr., George P. Williams, Washington, D. C., of counsel.

## OPINION

SIRICA, Chief Judge.

The Court presently has before it a motion for summary judgment filed by plaintiffs. Plaintiffs are the Senate Select Committee on Presidential Campaign Activities, established by Senate Resolution 60, 93rd Congress, 1st Session (1973), and the seven United States Senators who compose the Select Committee. Richard M. Nixon, President of the United States, is defendant. The action is styled "Complaint for declaratory judgment, mandatory injunction and mandamus."

Facts concerning the origin of this action are not controverted. The Senate Select Committee on Presidential Campaign Activities (Select Committee) became a duly authorized and constituted committee of the United States Senate on February 7, 1973, "empowered to investigate and study 'illegal, improper or unethical activities' in connection with the Presidential campaign and election of 1972 and to determine the necessity of new legislation 'to safeguard the electoral process by which the President of the United States is chosen.' " [1] In the course of its investigatory procedures, the Select Committee heard one Alexander P. Butterfield, formerly a Deputy Assistant to the defendant. Mr. Butterfield testified that the President had electronically recorded conversations occurring in various of his offices during a period of time that included the campaign and election of 1972. This testimony was later confirmed by Presidential counsel, J. Fred Buzhardt.[2]

Upon learning that among these recorded conferences were a series which they regarded as highly relevant

---

[1]. "Statement of Material Facts as to which there is no Genuine Issue" filed by plaintiffs on August 29, 1973, at 1. Counsel for the defendant President acknowledged in Court on October 4, 1973, that defendant takes no issue with plaintiffs' statement.

[2]. *Id.* at 2.

to their investigation, plaintiffs commenced informal efforts to secure the pertinent tape recordings as well as various written documents. Plaintiffs were and remain convinced that the recorded account of these presidential conversations, together with written White House documents alluded to by witnesses at their hearings, would undoubtedly contain information having an important bearing on their investigation and would probably resolve critical conflicts in the testimony of several key witnesses.

When informal attempts proved unsuccessful, the Select Committee directed two subpoenas *duces tecum* to the defendant President. Both were served on July 23, 1973, and together with proof of service, are attached as exhibits to the complaint herein. The first required production of the tape recordings of five meetings which were in each instance attended by the defendant President and then White House counsel, John W. Dean, III. Other persons had also been present during some of these conferences. As noted in the subpoena, the meetings occurred on September 15, 1972, February 28, 1973, March 13, 1973, and March 21, 1973, with two meetings on the last mentioned date. The second subpoena sought documents and other materials "relating directly or indirectly to [an] attached list of [25] individuals and to their activities, participation, responsibilities or involvement in any alleged criminal acts related to the Presidential election of 1972." Defendant filed no objection to either subpoena or to service thereof, although in a subsequent filing counsel have characterized the second subpoena as oppressive. Defendant's sole response consisted of a letter to Select Committee Chairman Senator Sam J. Ervin, Jr., expressing the President's intention not to comply with the subpoenas and the reasons for his decision. The President's letter is also appended to the complaint herein as an exhibit. It is understood that al-

though the subpoenaed tape recordings had previously been in the custody of others, at the time the subpoenas were issued, and at present, they are within the sole possession, custody and control of the defendant President.[3]

Plaintiffs next proceeded to file with the Court the present civil action. They deliberately chose not to attempt an adjudication of the matter by resort to a contempt proceeding under Title 2, U.S. C. § 192, or via Congressional common-law powers which permit the Sergeant at Arms to forcibly secure attendance of the offending party. Either method, plaintiffs state, would here be inappropriate and unseemly. On the day defendant filed his answer to the complaint, plaintiffs submitted a motion for summary judgment. A response to the motion and other memoranda were subsequently filed, and the matter came on for oral argument on October 4, 1973. In their subsequent pleadings and at oral argument, plaintiffs have emphasized that portion of the complaint which seeks a declaratory judgment. It is urged that such judgment include the following statements:

(1) That the two subpoenas were lawfully issued and served by plaintiffs and must be complied with by defendant President;

(2) That defendant President may not refuse compliance on the basis of separation of powers, executive privilege, Presidential prerogative or otherwise;

(3) That defendant President by his action to date has breached the confidentiality of the materials subpoenaed and waived any privilege that might have applied to them.

The prayer for a mandatory injunction and/or relief by way of mandamus has been referred to the Court's discretion and otherwise ignored by plaintiffs.

██ The case presents a battery of issues including jurisdiction, justiciability, invocation of the declaratory judg-

---

3. *Id.* at 3.

ment statute, executive privilege, waiver of privilege, validity of the Select Committee's investigation, and authority of the Select Committee to subpoena and bring suit against the President. Because of its ruling, the Court has found it necessary to consider only one question, that being whether the Court has jurisdiction to decide the case. The Court has concluded, for the reasons outlined below, that it lacks such jurisdiction, and the action is therefore dismissed with prejudice.

## I.

The Court has recently decided another case involving some of the same tape recordings that are here at issue.[4] As its caption indicates, that matter concerned a subpoena *duces tecum* issued to the President by a grand jury. It was there ruled that compliance with the subpoena could be judicially required as to unprivileged matter and that the Court was empowered to determine the applicability of any privilege. The case is presently the subject of appellate review.

■ This present case, by contrast, is a civil complaint, and in such actions particularly, jurisdiction is a threshold issue. Some elementary principles perhaps need restating here. For the federal courts, jurisdiction is not automatic and cannot be presumed. Thus, the presumption in each instance is that a federal court lacks jurisdiction until it can be shown that a specific grant of jurisdiction applies. Federal courts may exercise only that judicial power provided by the Constitution in Article III and conferred by Congress. All other judicial power or jurisdiction is reserved to the states. And although plaintiffs may urge otherwise, it seems settled that federal courts may assume only that portion of the Article III judicial power which Congress, by statute, entrusts to them.[5] Simply stated, Congress may impart as much or as little of the judicial power as it deems appropriate and the Judiciary may not thereafter on its own motion recur to the Article III storehouse for additional jurisdiction. When it comes to jurisdiction of the federal courts, truly, to paraphrase the scripture, the Congress giveth, and the Congress taketh away.[6] Finally, the principle is firmly established that jurisdictional requirements cannot be waived.

## II.

■ Plaintiffs have cited four statutory bases any and all of which, according to their submission, grant jurisdiction here. Before proceeding to analyze these provisions, however, it should be noted that the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure do not themselves confer jurisdiction. These statutes, as defendant

---

4. In re Grand Jury Subpoena Duces Tecum Issued to Richard M. Nixon, etc., 360 F. Supp. 1 (D.D.C.1973).

5. The Supreme Court and the Court of Appeals for this Circuit have affirmed that jurisdiction fails "if the cause is not one described by any jurisdictional statute." Powell v. McCormack, 395 U.S. 486, 512–513, 89 S.Ct. 1944, 1959, 23 L.Ed.2d 491 (1969) citing Baker v. Carr, 369 U.S. 186, 198–199, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). *See also,* Cary v. Curtis, 3 How. (44 U.S.) 236, 245, 11 L.Ed. 576 (1845) and United States Servicemen's Fund v. Eastland, 488 F.2d 1252 (1973) (D.C.Cir.1973). Reference to Article III, § 2 alone is insufficient.

For the contrary proposition plaintiffs cite six decisions: New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); Sanitary District of Chicago v. United States, 266 U.S. 405, 45 S.Ct. 176, 69 L.Ed. 352 (1925); In Re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 (1895); United States v. Arlington County, 326 F.2d 929 (4th Cir. 1964); United States v. Brand Jewelers, Inc., 318 F.Supp. 1293 (S.D.N.Y.1970), and United States v. Brittain, 319 F.Supp. 1058 (N.D.Ala.1970). None of these cases, however, holds that the government or anyone else may invoke jurisdiction of the federal courts without utilizing a specific jurisdictional statute. Each were initially brought by the United States and jurisdiction apparently invoked under 28 U.S.C. § 1345, or its predecessor, an independent statutory base applicable to the government.

6. Job I:21 (The Holy Bible)

points out, are procedural only and do not constitute the jurisdictional statute necessary to consideration of a specific declaratory judgment action.[7]

### A

■ One of the four statutory bases of jurisdiction cited by plaintiffs is 28 U.S.C. § 1345 which reads:

§ 1345. United States as plaintiff

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

Plaintiffs have disclaimed any attempt to classify themselves as an "agency or officer" within the meaning of this section. Rather they purport to bring suit in the name of the United States. Ref-

---

7. *See*, Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 94 L. Ed. 1194 (1950) and Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 249, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

8. *Cf.*, Confiscation Cases, 7 Wall (74 U.S.) 454, 457, 19 L.Ed. 196 (1868). It may be argued that Senate Resolution 262, 70th Congress, 1st Session (1928) permits the Select Committee to sue in the name of the United States here despite the provisions of § 516. Resolution 262 states in pertinent part:

[A]ny committee of the Senate is hereby authorized to bring suit on behalf of and in the name of the United States in any court of competent jurisdiction if the committee is of the opinion that the suit is necessary to the adequate performance of the powers invested in it or the duties imposed upon it. . . .

It occurs to the Court that there are at least three responses which answer this claim. First, insofar as the Senate Resolution is inconsistent with the provisions of § 516, it would appear that the statute, enacted by both Houses of Congress, should control over the Resolution of one House. Second, any exception to § 516 must be one "authorized by law." Although the question has never been specifically litigated, it seems apparent that "law" in § 516 would not include a legislative action of the sort represented by S.Res. 262. The term "law" does not

---

erence, however, to common practice and related statutory provisions belies the soundness of such a claim. Title 28 U.S.C. § 516, in language similar to that of § 1345, reserves to the Attorney General and Department of Justice authority to litigate as United States.

§ 516. Conduct of Litigation reserved to Department of Justice

Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

While this section does not require a congressional litigant to be represented by the Justice Department, it does deny such a litigant the right to sue as the United States when jurisdiction derives from § 1345.[8] The practice has never

---

normally encompass within its definition "resolution," and all recognized exceptions to § 516, such as 10 U.S.C. § 1037, are statute laws enacted by both Houses. In addition, the Supreme Court has hinted that authorization of legislative committees to sue as the United States under § 1345 may require a specific statutory enactment. The Court in Reed v. County Commissioners, 277 U.S. 376, 48 S.Ct. 531, 72 L.Ed. 924 (1928), did not reach the question of whether a Senate committee could act as the United States under 28 U.S.C. § 41 (predecessor to 28 U. S.C. § 1345), because *"even if it be assumed that the Senate alone may give that authority,"* it had not even attempted to do so. 277 U.S. at 388, 48 S.Ct. at 532 (emphasis added).

Third, and most importantly, the language and historical setting of S.Res. 262 exact the conclusion that it was intended, not to confer jurisdiction, but to ensure standing in lawsuits. Both parties agree that the Senate adopted S.Res. 262 in response to the Supreme Court decision in *Reed*. As just noted, the *Reed* Court did not reach the issue of statutory jurisdiction because it found that the Senate Special Committee lacked standing. 277 U.S. at 388, 48 S.Ct. 531. S. Res. 262 was intended to correct that defect, and thus it authorized committees to sue "in any court of competent jurisdiction." This language traditionally means courts that already have jurisdiction, that are presently competent to consider the case, pursuant to

been otherwise and the two cases cited by plaintiffs do not so hold.[9] Section 1345 is simply inapplicable here.

## B

■ A second statute called to the Court's attention is 28 U.S.C. § 1361. That statute provides:

§ 1361. Action to compel an officer of the United States to perform his duty.

The district courts shall have original jurisdiction of any action in the nature of a mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

■ In attempting to meet the terms of § 1361, plaintiffs impute to the defendant President a "legal duty to respond to and to comply with . . . [Select Committee] subpoenas." As defendant indicates, however, the traditional criteria for mandamus proceedings apply here [10] and only a "ministerial, plainly defined and peremptory" duty may properly be the subject of such proceedings.

Before such a writ may issue, it must appear that the claim is clear and certain and the duty of the officer involved must be ministerial, plainly de-

fined, and peremptory. Huddleston v. Dwyer, 10 Cir., 145 F.2d 311. The duty sought to be exercised must be a positive command and so plainly prescribed as to be free from doubt. Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 50 S.Ct. 320, 74 L. Ed. 809.[11]

These criteria have not been satisfied.

■ After reading cases that have considered applications for mandamus, the Court cannot in good conscience hold that any duty defendant may have as President is "plainly defined and peremptory" and that phrase has been interpreted.[12] Mandamus properly issues to enforce such duties as that of a government officer to issue a driver's or marriage license when all licensing requirements are met or that of a military official to confer an honorable discharge where the law so provides. In every case, official duties are involved. No analogous obligation appears here. Regardless of whatever duty the President may owe the Select Committee as a citizen with evidence in his possession, it is not "free from doubt" that his *official* responsibilities require compliance. There is nothing in the Constitution, for example, that makes it an official duty of Presidents to comply with Congressional subpoenas.[13]

some independent statutory provision. It does not itself serve to bestow jurisdiction.

9. Plaintiffs cited In re Hearings by the Committee on Banking and Currency, 245 F.2d 667 (7th Cir. 1957) and In re Hearings by the Committee on Banking and Currency, 19 F.R.D. 410 (N.D.Ill.1956).

10. See, Senate Report No. 1992, 87th Cong., 2nd Sess. pp. 2–4 (1962), U.S.Code Cong. & Admin.News, p. 2784. 28 U.S.C. § 1361 did not create a new or distinct cause of action.

11. Prairie Band of Potawatomie Tribe of Indians v. Udall, 355 F.2d 364, 367 (10th Cir.), cert. denied, 385 U.S. 831, 87 S.Ct. 70, 17 L.Ed.2d 67 (1966).

12. *See e. g.*, Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958) ; McGaw v. Farrow, 472 F.2d 952 (4th Cir. 1973) ; Spock v. David, 469 F.2d 1047 (3rd Cir. 1972) ; United States v. Walker, 409 F.2d 477 (9th Cir. 1969) ; Guffanti v. Hershey, 296 F.Supp. 553 (S.D.N.Y.1969) ; Switzer-

land Co. v. Udall, 225 F.Supp. 812 (W.D.N.C. 1964) aff'd, 337 F.2d 56 (4th Cir. 1964), cert. denied, 380 U.S. 914, 85 S.Ct. 900, 13 L.Ed.2d 800 (1965).

13. Plaintiffs misread the prior opinion of this Court when they think they find a declaration therein that Presidents have a duty, ministerial in nature, to comply with subpoenas. The Court rather stated that defendant's obligation to produce unprivileged evidence was "more *akin* to a ministerial duty" than to a discretionary one, "*if indeed it concerns official duties at all.*" In re Grand Jury Subpoena Duces Tecum Issued to Richard M. Nixon, etc., 360 F.Supp. 1, 8, n. 21 (D.D.C.1973). (emphasis added). In sustaining the Court's position in that case, the Court of Appeals for this Circuit characterized the responsibility of the President to produce evidence as one of the "routine legal obligations that confine all citizens." Nixon v. Sirica, 487 F.2d 700, at page 711 (D.C. Cir.1973).

A fair reading of § 1361 cannot sustain jurisdiction here.

### C

■ As a third statutory basis of jurisdiction, plaintiffs cite the Administrative Procedure Act, 5 U.S.C. §§ 701–706. There is some question whether the President is an "agency" for purposes of the Act,[14] whether "agency action" is involved here,[15] and whether plaintiffs have suffered a "legal wrong" within the meaning of these provisions.[16] A final resolution of these problems, however, is unnecessary here since the rule in this Circuit precludes use of this Act altogether as an independent basis of jurisdiction.[17] The Administrative

14. Plaintiffs cite Amalgamated Meat Cutters & Butcher Workmen v. Connally, 337 F. Supp. 737 (D.D.C.1971), the decision of a three judge court written by Circuit Judge Leventhal, as definitively establishing that the President is an "agency" for purposes of the statute. As the Court reads that decision, however, and as defendant suggests, that issue was specifically left open. The opinion does· include the following statement cited by plaintiffs:

The leading students of the APA, whose analyses are often cited by the Supreme Court, and who on some matters are in conflict with each other, seem to be in agreement that the term "agency" in the APA includes the President—a conclusion fortified by the care taken to make express exclusion of "Congress" and "the courts." 337 F.Supp. at 761 (footnote omitted).

Nevertheless, in the next sentence the court writes:

But we need not consider whether an action for judicial review can be brought against the President *eo nomine.* 337 F. Supp. at 761.

The Court of Appeals in this Circuit has also left open this question. *See,* Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1073 n. 17 (1971). Defendant further notes, "it is hard to imagine that a statute that excludes from its operations even the governments of the territories and the Mayor of the District of Columbia should be held to have included, in its bland and neutral language, the President of the United States." Brief in Opposition at 33 n. 7.

15. "Agency action" is defined by the statute as "the whole or a part of any agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or the failure to act." 5 U.S.C. § 551(13). Plaintiffs cite this language as aptly describing "the President's failure to turn over the evidence which the Committee has demanded.** " " ** In fact, the term 'adjudication' as defined by the APA, could well apply to the President's action. See 5 U.S.C. § 551 (6 and 7)." Reply Memorandum at 18. Defendant interprets the same definition as applicable only to the "rule-making" and "formulation of or-

ders" functions of agencies, categories into which his actions do not fall. Brief in Opposition at 33, 34.

16. 5 U.S.C. § 702 provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

The plaintiffs claim a legal right of the Committee to have its lawful subpoenas obeyed by the President and cite principally Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957) and McGrain v. Daugherty, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580 (1927). Supplemental Memorandum at 27; Reply Memorandum at 18, 19. Defendant maintains that although plaintiffs may have cited an adverse effect, they have not pointed to an illegal effect recognized by law. He cites Senate Report No. 752, 79th Congress, 1st Session (1945) at 26, and Kansas City Power & Light Co. v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924, cert. denied, 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780 (1955). Brief in Opposition at 34.

17. See Pan American World Airways, Inc. v. CAB, 129 U.S.App.D.C. 159, 392 F.2d 483, 494 (1968); Kansas City Power & Light Co. v. McKay, 96 U.S.App.D.C. 273, 225 F. 2d 924, 932–933, cert. denied, 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780 (1955); Almour v. Pace, 193 F.2d 699, 701 n. 5 (D.C. Cir. 1951). Such is the rule in other circuits as well. *See, e.g.,* Arizona State Dept. of Public Welfare v. Dept. of Health, Education and Welfare, 449 F.2d 456, 464 (9th Cir. 1971), cert. denied, 405 U.S. 919, 92 S.Ct. 945, 30 L.Ed.2d 789 (1972); Zimmerman v. United States Government, 422 F.2d 326, 330–331 (3rd Cir.), cert. denied, 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970); Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe, 370 F.2d 529, 532 (8th Cir. 1967); Chournos v. United States, 335 F.2d 918, 919 (10th Cir. 1964); Local 542, International Union of Operating Engineers v. NLRB, 328 F.2d 850, 854 (3rd Cir.), cert. denied, 379 U.S. 826, 85 S.Ct. 52, 13 L.Ed.2d 35 (1964); Ove Gustavsson

Procedure Act does not confer jurisdiction where an action is not otherwise cognizable by the federal courts. Plaintiffs have urged that although this was once the rule in the District of Columbia, the Independent Broker-Dealers' Trade Association v. SEC case at 142 U.S.App.D.C. 384, 442 F.2d 132 (1971), cert. denied, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 57 (1972) has effectively overruled the earlier position. The Court does not so read *Independent Broker-Dealers*. Plaintiffs there enjoyed an independent basis for jurisdiction in 28 U.S.C. § 1331, and the ruling concerned not whether the APA itself affords jurisdiction but whether the SEC's informal act was reviewable and whether any such review might be had in the District Court. The Court held that an SEC letter to the New York Stock Exchange requesting that the Exchange prohibit "customer-directed give-ups" constituted judicially reviewable "agency action." The Court agrees with defendant's counsel that it is hardly probable the Court of Appeals would overrule its prior decisions without any reference to them.

The Court concludes that the Administrative Procedure Act cannot serve to grant jurisdiction here.

### D

▅▅ Plaintiffs have placed principal reliance for purposes of jurisdiction on 28 U.S.C. § 1331. That statute, often termed the "federal question" jurisdiction statute, provides in pertinent part as follows:

§ 1331. Federal question; amount in controversy; costs

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000 exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

Unlike the statutes heretofore discussed, this provision includes a monetary sum or value as an incident of jurisdiction, the $10,000 jurisdictional amount. Although the amount has varied over the years, defendant is correct in his assertion that whatever the sum, it is a jurisdictional prerequisite.[18] The satisfaction of a minimum amount-in-controversy is not a technicality; *it is a requirement imposed by Congress which the courts may not dispense with at their pleasure.*

While some decisions have held to the contrary, most notably Spock v. David, 469 F.2d 1047 (3rd Cir. 1972), it is the near-universal view that a right or matter in controversy must be capable of valuation in dollars and cents to sustain jurisdiction under § 1331.[19] To the Court, this constitutes not only the majority but the more realistic analysis of the amount-in-controversy requirement. Where it desires to award jurisdiction over cases involving important rights without regard to a monetary valuation, the Congress is capable of excluding such restrictions; witness, for example, the civil rights and elective franchise statute at 28 U.S.C. § 1343. Thus, where Congress has required a jurisdictional sum, it would seem unwarranted for a court to presume that the limitation was unintentional.[20]

Contracting Co. v. Floete, 278 F.2d 912, 914 (2d Cir.), cert. denied, 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 188 (1960).

18. *See, e.g.,* Holt v. Indiana Mfg. Co., 176 U.S. 68, 20 S.Ct. 272, 44 L.Ed. 374 (1900) and United States v. Sayward, 160 U.S. 493, 16 S.Ct. 371, 40 L.Ed. 508 (1895).

19. *See, e.g.,* Barry v. Mercein, 5 How. (46 U.S.) 103, 12 L.Ed. 70 (1847); McGaw v. Farrow, 472 F.2d 952 (4th Cir. 1973); Kheel v. Port of New York Authority, 457 F.2d 46 (2nd Cir. 1972); Goldsmith v. Sutherland, 426 F.2d 1395 (6th Cir.), cert. denied, 400

U.S. 960, 91 S.Ct. 353, 27 L.Ed.2d 270 (1970); Rosado v. Wyman, 414 F.2d 170 (2nd Cir. 1969), reversed on other grounds, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Rapoport v. Rapoport, 416 F.2d 41 (9th Cir. 1969), cert. denied, 397 U.S. 915, 90 S.Ct. 920, 25 L.Ed.2d 96 (1970); Giancana v. Johnson, 335 F.2d 366 (7th Cir. 1964), cert. denied, 379 U.S. 1001, 85 S.Ct. 718, 13 L.Ed.2d 702 (1965).

20. Defendant states that Congress has had before it several times legislation "rewriting the statute to remove the amount in con-

■ The question therefore becomes whether a quantifiable amount-in-controversy, of sufficient value to satisfy the statutory minimum, exists here. The parties agree, and it is well settled that in determining the amount-in-controversy, reference to either party's situation is appropriate. Where the case is worth at least $10,000 to the defendant, the requirement is satisfied just as fully as where a plaintiff can demonstrate the $10,000 value or sum.

Computations measure the "value of the object" of the suit, Mississippi & Missouri R.R. Co. v. Ward, 2 Black (67 U.S.) 485, 17 L.Ed. 311 (1862), that is the monetary value of objects at issue or direct monetary impact of an adjudication. The object here could be described as either the tapes and documents themselves or as access to the information contained therein. Since intrinsically, the tape recordings and documents do not approach a $10,000 value, we look instead to the value of a disposition either granting or denying the declaratory judgment and other relief sought.

■ Plaintiffs suggest several possible analyses by which existence of the required minimum value may be established. It appears to the Court, however, that none of these proposals suffice. First, in an affidavit of the Select Committee Chairman appended to their Supplemental Memorandum, plaintiffs calculate the expenses they will incur if compelled to secure from other sources the information contained in the subpoenaed materials. Though the Court does not dispute this assessment, it nevertheless cannot accept such indirect costs as the amount-in-controversy. Alternative means of achieving the object of a suit or collateral results of a judgment are not properly considered in computing the jurisdictional minimum under § 1331.[21] The cost of added Committee work to ferret out the desired information is quite clearly the cost of an alternative procedure. Nor is the Select Committee's appropriation a valid measure. The decision in Williams v. Phillips, 360 F.Supp. 1363 (D.D.C.1973), the only authority cited for this proposition, contains no such holding. Plaintiffs have not attempted to quantify the direct impact of a judicial decision, and indeed, it appears to the Court that such an appraisal is impossible from either party's viewpoint.

■ Second is a suggestion that the rights and responsibilities of legislators exceed the $10,000 minimum. The restriction to a dollars and cents evaluation of the matter in controversy, however, logically precludes an assumption that the value of such a right can satisfy § 1331. The value of the right or duty must be quantifiable.[22] There must be some financial gain or loss asso-

---

troversy requirement in cases in which constitutional rights are asserted against federal officers," but has each time failed to enact it. Brief in Opposition at 25.

21. *See, e.g.,* Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248 (1934); Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871 (1923); Town of Elgin v. Marshall, 106 U.S. 578, 1 S.Ct. 484, 27 L.Ed. 249 (1882); Quinalt Tribe of Indians v. Gallagher, 368 F.2d 648 (9th Cir. 1966), cert. denied, 387 U.S. 907, 87 S.Ct. 1684, 18 L.Ed.2d 626 (1967).

For the contrary proposition plaintiffs cite Petroleum Exploration Co. v. Public Service Commission, 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294 (1938); Bitterman v. Louisville & Nashville R.R., 207 U.S. 205, 224–225, 28 S.Ct. 91, 52 L.Ed. 171 (1907), and Federated Mutual Implement & Hardware Ins. Co.

v. Steinheider, 268 F.2d 734 (8th Cir. 1959). In each of these instances, however, parties stood to suffer monetary losses in excess of the jurisdictional amount as the *direct* result of a judgment. In *Petroleum Exploration* it was the expense a Maine corporation would incur if forced to appear and give information pursuant to an order of the Kentucky Public Service Commission. In *Bitterman*, it was a railroad's financial loss if ticket sales by brokers were not enjoined. The *Federated Mutual* case concerned losses that would befall an insurance company if a former sales agent were not restrained from competing in the insurance business for two years.

22. Plaintiffs urge that Kennedy v. Sampson, 364 F.Supp. 1075 (D.D.C., 1973) and Holtzman v. Richardson, 361 F.Supp. 544 (E.D. N.Y., 1973), reversed, 484 F.2d 1307 (2nd

ciated directly with sustaining, rejecting or declaring the right. The Supreme Court has only recently reminded us that in suits against federal officials under § 1331, "it is necessary to satisfy the amount-in-controversy requirement for federal jurisdiction." Lynch v. Household Finance Corp., 405 U.S. 538, 547, 92 S.Ct. 1113, 1119, 31 L.Ed.2d 424 (1972). Any direct financial consequence to rights or duties is not apparent in this case.

Finally, regarding value from defendant's viewpoint, the Court cannot find any basis on which to assign a dollar value to the matter in controversy. Just as the constitutional obligations of legislators, defendant's interest, whatever it may be termed, is incapable of such an appraisal. Each of plaintiffs' assertions, then, regarding the amount-in-controversy are legally inadequate, and finding no possible valuation of the matter which satisfies the $10,000 minimum, the Court cannot assert jurisdiction by virtue of § 1331.

No jurisdictional statute known to the Court, including the four which plaintiffs name, warrants an assumption of jurisdiction, and the Court is therefore left with no alternative here but to dismiss the action.

### III.

Because of its conclusion and disposition, the Court does not reach the problem of justiciability or the merits of the case. Any comment on these matters therefore is inappropriate, and the Court does not proffer its views.

The Court has here been requested to invoke a jurisdiction which only Congress can grant but which Congress has heretofore withheld. Whether such jurisdiction ought to be conferred is the prerogative of the Congress. Plaintiffs, of course, are free to pursue whatever remedy they now deem appropriate, but the Court cannot, consistent with law and the constitutional principles that reserve to Congress the conferral of jurisdiction, validate the present course.

### ORDER

This matter having come before the Court on plaintiffs' Motion for Summary Judgment, and the Court having considered the memoranda and arguments of counsel, and the Court having concluded for the reasons stated in the attached opinion that it lacks jurisdiction over this matter, it is by the Court this 17th day of October, 1973,

Ordered that this action be, and the same hereby is, dismissed with prejudice.

---

Cir. 1973) found that the constitutional rights and duties of legislators met the monetary requirement of § 1331. This conclusion, however, seems inaccurate. *Kennedy* did not discuss jurisdiction but was apparently a § 1361 case (performance of a ministerial duty). In *Holtzman*, the object of the controversy from defendants' viewpoint (bombing in Cambodia) far exceeded the $10,000 jurisdictional sum. As plaintiffs note, a court in this district has apparently ruled that the inherent value of a constitutional right to vote "must be equal to any amount set for jurisdictional purposes." West End Neighborhood Corporation v. Stans, 312 F.Supp. 1066, 1068 (D.D.C.1970).

This Court, however, cannot justify a conclusion that the *Stans* decision represents the law in this or any Circuit with the possible exception of the Third, and accordingly, with due respect, cannot regard that precedent.

To say that constitutional rights are incapable of a monetary assessment is not to say that they are petty or worthless. All persons realize, or should realize, that their value is unsurpassed. Such value, however, is simply not the type intended to satisfy the monetary restrictions of § 1331. Other statutes may grant jurisdiction in some of these cases, but § 1331 does not.