**Ralph NADER et al., Plaintiffs,**
**v.**
**Earl BUTZ et al., Defendants.**

**Civ. A. No. 148–72.**

United States District Court,
District of Columbia.

March 13, 1974.

See also, D.C., 60 F.R.D. 381.

William A. Dobrovir, Andra N. Oakes,
Washington, D. C., for plaintiffs.

Irving Jaffee, Acting Asst. Atty. Gen.,
Irwin Goldbloom, David J. Anderson,
Attys., Dept. of Justice, Washington, D.
C., for defendants.

David M. Dorsen, Asst. Chief Counsel,
Counsel for the Senate Select Committee
On Presidential Campaign Activities,
Washington, D. C., amicus curiae.

## MEMORANDUM AND ORDER

WILLIAM B. JONES, District Judge.

Plaintiffs have filed a motion for clarification or alternatively for a modification of the December 21, 1973, protective order entered in this case. The reason advanced by plaintiffs is that on January 10, 1974, the Senate Select Committee on Presidential Campaign Activities (Committee) served upon William A. Dobrovir, one of counsel for the plaintiffs, a subpoena duces tecum for the production of some thirty items in his possession. The subpoena demanded that counsel as distinguished from the plaintiffs produce such items. Counsel declined to comply with the subpoena duces tecum, since he believed he was prohibited from doing so by the protective order.

On February 12, 1974, the Committee filed a motion for leave to file a brief amicus curiae in support of plaintiffs' motion for clarification or modification of the protective order. On February 21, 1974, the Committee filed a supplemental memorandum supporting its motion. The Committee's motion for leave to file a brief amicus curiae is granted and this Court in disposing of plaintiffs' motion has considered the Committee's brief and supplemental memorandum.

The protective order of December 21, 1973, directed counsel not to publicly disclose material submitted to them under subpoena "unless and until such material is publicly filed with the Court in some appropriate manner or otherwise appropriately utilized in this judicial proceeding." That order resulted from Mr. Dobrovir's using a tape recording on an occasion unrelated to this litiga-

tion. ˙ Plaintiffs did not object to the entry of the order.[1]

The thirtieth item listed in the February 12, 1974, Committee's subpoena duces tecum directed to William A. Dobrovir is that very tape recording as well as any summary or copy thereof. That tape recording and the other items listed in the Committee's subpoena were received by plaintiffs through their counsel as a result of a subpoena duces tecum served by plaintiffs on the Custodian. They are covered by the protective order.

Similar subpoenas duces tecum were directed to Irving Jaffee, Acting Assistant Attorney General, and Irwin Goldbloom, Acting Deputy Assistant Attorney General, of the Department of Justice. Under date of January 21, 1974, Acting Assistant Attorney General Jaffee addressed a letter to Senator Ervin, Chairman of the Senate Select Committee on Presidential Campaign Activities, in which he acknowledged receipt of the two subpoenas served upon him and Acting Deputy Assistant Attorney General Goldbloom. In that letter the Acting Assistant Attorney General stated that the Department of Justice had possession of the items listed in the attachment to the subpoenas by virtue of its representation as counsel for the Custodian of Records of the White House. It was also stated that certain other documents involved in this litigation were the subject of a subpoena served by the Committee on President Nixon and that the President declined to produce the documents as he stated in his letter to Senator Ervin under date of January 4, 1974. Acting Assistant Attorney General Jaffee advised Senator Ervin of the December 21, 1973, protective order and stated the Government sought the protective order so as to protect against ex-

tra-judicial use of the material obtained by discovery proceedings in this litigation and to insure that the issues in this case be judicially resolved without impact of extra-judicial use of the evidence. Acting Assistant Attorney General Jaffee stated that he and Acting Deputy Assistant Attorney General Goldbloom respectfully declined to comply with the subpoenas served by the Committee on the two of them.

The only reason that counsel for the plaintiffs and counsel for the defendants in this action have in their respective possessions the items listed in the subpoenas issued by the committee was because they were counsel for the respective parties and the materials that they have in their possession were received as a result of a subpoena issued out of this Court against the Custodian. As the records in this case show, the subpoena issued by the plaintiffs in this case encompassed many items. With respect to most of them, the Custodian has asserted the executive privilege doctrine and those documents and one tape are in the possession of the Court for an *in camera* inspection. The items listed in the Committee's subpoenas to counsel were considered by the Custodian and he concluded that executive privilege should not be asserted with respect to them in this case.

Normal procedure, if followed, would have the Committee's subpoenas served not on counsel but either on the President or the Custodian of the Records, but the Committee has not seen fit to follow such a procedure. That it has authority to direct subpoenas to the President or Custodian or both is evident from Senate Resolution 60, 93d Cong., 1st sess., which established the Committee and granted it authority to issue subpoenas. In 1973, the Commit-

---

1. The tape recording concerned an alleged meeting of the President of the United States with certain dairy industry leaders on March 23, 1971 at the White House. This Court has neither seen nor heard that tape recording. Neither the President nor the Custodian of Records of the White House, Office of Management and Budget, and Council of Economic Advisers (Custodian) invoked the doctrine of executive privilege with respect to that tape recording. Indeed, it was turned over directly to William A. Dobrovir by one of counsel for defendants, who is also counsel for the Custodian.

tee acting pursuant to that resolution served upon the President of the United States a subpoena duces tecum commanding him to produce a number of documents. When the President refused to comply with the subpoena, the Committee brought an action in this Court to compel him to produce such documents. Senate Select Committee on Presidential Campaign Activities v. Nixon, Civil Action No. 1593–73, 366 F. Supp. 51. On October 17, 1973, this Court (Sirica, C. J.) dismissed that action on the ground that this Court did not have jurisdiction. Following that dismissal, Congress enacted Public Law 93–190, 28 U.S.C. § 1364, which granted this Court original jurisdiction to enforce or secure a declaration concerning the validity of any subpoena issued by the Committee to the President and to procure the production before the Committee of any information, document, tape recording, or other materials relevant to the matters the Committee is authorized to investigate. Thereafter the Committee filed an amendment to its complaint in Civil Action 1593–73, and thus renewed its application to this Court for the enforcement of the subpoena served on the President to obtain five tape recordings.

On February 8, 1974, this Court (Gesell, J.), while recognizing the case presented a justiciable controversy, denied injunctive relief directing the President to comply with the Committee's subpoena for the five tape recordings. Those tape recordings were five in number and allegedly related to conversations between the President and John Wesley Dean, III, counsel to the President at the time of the conversations. They were described as portions of taped conversations which dealt with "alleged criminal acts occurring in connection with the Presidential election of 1972." Those tapes were furnished the Watergate Special Prosecutor for presentation to a grand jury investigating the Watergate matter.

Unlike the tape recordings in Civil Action 1593–73, the materials sought here by the Committee's subpoenas served on counsel relate to a milk price order of 1971, which is the subject matter of this action. There is now pending in the United States District Court for the Western District of Missouri, Western Division, the case of United States of America v. Associated Milk Producers, Inc., et al., which is known as Midwest Milk Monopolization Litigation. In that case the defendant, Associated Milk Producers, Inc., has sought to obtain from the Government certain documents among which are documents produced in this Court in this case for *in camera* examination. Judge Oliver of the United States District Court for the Western District of Missouri, in treating with the Associated Milk Producers, Inc., motion for production of such documents, entered a memorandum and order which, among other things, called upon the Special Watergate Prosecutor for any comments he might deem appropriate. Under date of March 5, 1974, Assistant Special Prosecutor Jon A. Sale addressed a letter to Judge Oliver. In that letter Sale advised that it would be highly undesirable for the Associated Milk Producers, Inc., to receive any of the material referred to by Judge Oliver in his memorandum and order. The Assistant Special Prosecutor pointed out that there is an ongoing grand jury investigation into political contributions made by either the Associated Milk Producers, Inc., or its Committee, TAPE, or both, and the possible attempts by Associated Milk Producers, Inc., to obtain favorable governmental action as a *quid pro quo* therefor. The Watergate Special Prosecution Force asserted strong opposition to any process which would serve as the first step in sacrificing the integrity of the grand jury process.

While it is true that the materials sought by the Committee from counsel for the parties in this case have already been furnished by the Custodian to the plaintiffs without any executive privilege being asserted, it nevertheless is the obligation of this Court to consider the integrity of the criminal process

both before the grand jury and with respect to any resulting indictments involving the issuance of milk price orders in 1971. Among other things, that is what the December 21, 1973, protective order does.

Furthermore no showing has been made that the Committee is unable to obtain the material sought here from the President through the power given to the Committee. Whether the President would refuse to turn over the material is unknown. And if the President should refuse to comply, the question of the justification of his refusal would be the subject matter of litigation instituted by the Committee against the President.

In view of all of the foregoing, plaintiff's motion to clarify or modify the December 21, 1973, protective order will be denied. The order is clear on its face that it prohibits counsel either for the plaintiffs or for the defendants from disclosing any material obtained under a subpoena. The documents listed in the Committee's subpoena duces tecum to the counsel were so obtained by counsel.

It is therefore this 13th day of March, 1974, without a hearing pursuant to local rule 1–9(e),

Ordered that the motion of the Senate Select Committee on Presidential Campaign Activities for leave to file a brief amicus curiae be and the same is hereby granted;

Further ordered that plaintiffs' motion to clarify or modify the December 21, 1973, protective order entered in this action be and the same is hereby denied; and

Further ordered and declared that the protective order prohibits the disclosure by counsel for the parties of the material sought by the subpoenas of the Committee to anyone unless and until it is publicly filed with the Court in some appropriate manner or otherwise appropriately utilized in this judicial proceeding.